Argued and submitted September 15, 1982, reversed and
remanded for reconsideration February 2, 1983

# MILLER et al,
*Petitioners,*
*v.*
# OREGON LIQUOR CONTROL COMMISSION,
*Respondent.*

## (CA A24060)
657 P2d 1250

Ronald K. Cue, Ashland, argued the cause for petitioner.
With him on the brief was Cue and Parker, Ashland.

Christine L. Dickey, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

**YOUNG, J.**

This is an appeal from an Oregon Liquor Control Commission's (OLCC) revised order denying petitioners' application for a seasonal dispenser license. ORS 472.205.[1] Petitioners contend that OLCC improperly applied existing rules applicable to regular dispenser licenses,[2] that it should have adopted rules particular to seasonal licenses and that the evidence was insufficient to support certain findings. We reverse and remand for reconsideration.

Petitioners operate a restaurant in Ashland in Jackson County and had been issued a restaurant dispenser license[3] in 1980. The restaurant is located within three blocks of the Oregon Shakespeare Festival theatres. The festival attracts over 260,000 persons during its nine-month season from February through October. Petitioners applied for a seven-month seasonal dispenser license for April through October. OLCC found that there are 12 dispenser licenses, but no seasonal licenses, issued or committed within the city limits of Ashland and 60 dispenser licenses and six seasonal dispenser licenses issued or committed in Jackson County. Ashland's permanent population is approximately 15,000; Jackson County's is 132,000.

Of the rules that OLCC applied in denying the application, two are pertinent to our discussion. OAR 845-05-030(1) provides:

"The following criteria will weigh against issuing a license:

---

[1] ORS 472.205 provides, in part:

"(1) A seasonal dispenser's license which is valid for a season, as fixed by rule of the commission, may be issued or renewed. The commission shall designate the term of the license without regard to the calendar year.

"* * * * *

"(5) As used in this section, 'season' means a period not exceeding seven months which is generally suitable for or associated with certain activities including but not limited to hunting, fishing, skiing or usually associated with vacations or other specialized activities."

[2] OLCC may grant dispenser licenses for the sale of "distilled liquor" for consumption on the premises. ORS 472.060(2)(a). Distilled liquor is defined by ORS 472.010(5). There is more than one class of dispenser license. *See* ORS 472.110.

[3] A restaurant license limits the licensee to the sale of beer and wine. *See* ORS 471.250.

"There are sufficient licensed premises in the locality set out in the application, or the granting of a license in the locality set out in the application is not demanded by public interest or convenience. Factors such as declining or static population, business or industrial development in the applicant's community, or by decreasing sales or patronage at other similarly licensed outlets in that community may be considered. For purposes of this section, the applicant's community will be a 10-mile radius for dispenser licenses and a two-mile radius for other licenses, unless the applicant establishes that a substantial portion of the patronage of the premises is or would be from a larger or smaller area."

OAR 845-05-040 provides in part:

"(1) An application for a dispenser license may be granted or denied on the basis of a comparison with other existing dispenser licenses in the same city or county or with other pending applications for such licenses anywhere in the state, as provided in sections (2) and (3) of this rule.

"(2) Preference in licensing may be given to applicants showing any one or more of the following. The applicant shall have the burden of proving that these provisions apply:

"* * * * *

"(c) The public is not being adequately served by dispenser outlets, if any, in the applicant's community as defined in OAR 845-05-030(1). Evidence that there is more than one dispenser license per 2,000 people in the applicant's city or county will be prima facie evidence that the applicant's community is being adequately served.

"(d) Applicant's premises are located in a rural or unincorporated area or in an incorporated area with population of less than 25,000, or applicant's premises has seating capacity for 100 or fewer patrons.

"* * * * *"

OLCC used Ashland as the relevant community for purposes of OAR 845-05-030(1), because figures were unavailable as to dispenser licenses in a 10-mile radius of petitioners' location. It concluded that the

"figures indicate that the City of Ashland contains significantly more dispenser outlets than the approximately 1.14 dispenser licenses per 2,000 population authorized

for issuance to the State of Oregon as a whole. This relatively large number of outlets indicates that there are sufficient dispenser outlets in the Applicant's community, and weighs against license issuance under OAR 845-05-030(1)."

To have so concluded, OLCC had to have disregarded the seasonal population increase attributable to the Festival.[4] Without that increase, the license-to-population ratio is 12 licenses to 15,000 population or 1.6 licenses per 2,000 population, which is higher than the state quota. See ORS 472.110(4). But OLCC had also found that the nine-month Shakespeare Festival attracted and would attract attendance of over 260,000.

Although OLCC found facts as to the seasonal population, it did not apply those population figures.[5] Therefore, it must have determined that the relevant population did not include the seasonal population for purposes of OAR 84505-030(1). It necessarily determined, then, that petitioners had established their patronage area to be the permanent population of Ashland.

■ OAR 845-05-040(2) allows preference in licensing if the applicant proves one or more of several facts, including that the public is not being adequately served by existing dispenser outlets in the relevant community (as determined under OAR 845-05-030(1)), OAR 845-05-040(2)(c); or that the applicant's premises are in an incorporated area of less than 25,000 population, OAR 845-05-040(2)(d). Because of its determination under OAR 845-05-030(1) that the relevant community is Ashland's permanent population of 15,000, OLCC necessarily determined that petitioners had proved that their premises were in an incorporated area of less than 25,000 population. Petitioners were therefore entitled to have OLCC consider that criterion for preference under 845-05-040(2)(d). OLCC did not consider that criterion and therefore acted inconsistently with its

---

[4] OLCC's rule on seasonal licenses, OAR 845-04-040, recognizes "seasonal demand resulting from tourism" as a basis for issuing seasonal licenses.

[5] The hearings examiner did apply those population figures and concluded in his proposed order that petitioners' likely area of patronage did not contain excess dispenser outlets under OAR 845-05-030(1). OLCC deleted this from its final order.

own rules without explanation.[6] That was error.[7] ORS 183.482(8)(b)(B). The order must be set aside and remanded for reconsideration.

■     Because we remand, we consider petitioners' assignments of error concerning application of the license quota to seasonal license applicants and the need for separate rules for seasonal license applications.[8] OLCC determined that petitioners' community has sufficient outlets under OAR 845-05-030(1), which lists certain factors that weigh against issuing a license. OLCC based its determination of sufficient outlets on evidence showing that Ashland's license-to-population ratio is higher than the state average of 1.14 per 2,000. That is not the type of factor listed in OAR 845-05-030(1) as weighing against issuing a license. It is, however, relevant to whether the community is adequately served under OAR 845-05-040(2)(c).[9] In effect, OLCC determined that because the ratio evidence indicated that the community was adequately served, there were sufficient licenses already issued.[10] We need not decide whether that was a proper interpretation of the rules.

---

[6] It therefore also ignored its statutory mandate under ORS 472.114(2), which requires OLCC to recognize the importance of issuing licenses to qualified applicants in small communities.

[7] OLCC argues on appeal that its failure to consider OAR 845-05-040(2)(d) represents a reasonable interpretation of "population," because "[w]here the application is for a seasonal license, it is appropriate to consider the 'population' of the area during the season in question." If that is how OLCC determined the facts, that determination is inconsistent with its conclusion that Ashland's permanent population was the relevant community for purposes of OAR 845-05-030(1) and 845-05-040(2)(c); *i.e.,* petitioners would have established that a substantial portion of patronage would be from a larger area and that the public was not adequately served by existing licenses if measured by the license-to-population ratio. The order does not express that reasoning. If it did, the reasoning would be contradictory, hence fallacious, and the order would be set aside for that reason. *McCann v. OLCC,* 27 Or App 487, 502-03, 556 P2d 973 (1976), *rev den* 277 Or 99 (1977).

[8] We find no reversible error in appellant's other assignment.

[9] OAR 845-05-040 is captioned "Additional Criteria for Dispenser Licenses," indicating that the factors that may be considered under that rule, including license-to-population ratios, are factors other than those to be considered under OAR 845-05-030 "Criteria Weighing Against Issuing License."

[10] Under OAR 845-05-040(2)(c), evidence that the community is not adequately served weighs in favor of issuance, but it appears that evidence to the contrary weighs neither for nor against issuance under *that* rule. OLCC, however, used that evidence to determine under OAR 845-05-030(1) that there were sufficient outlets, weighing against issuance.

Even if it were, its application runs afoul of the statutory exemption in ORS 472.115.

ORS 472.115 provides that the statewide quota of one license per 2,000 population as determined by Board of Higher Education figures, ORS 472.110(4), "shall not apply to premises licenses under," *inter alia,* ORS 472.205, which governs seasonal licenses. The State Board of Higher Education conducts the state census, ORS 190.510 *et seq,* which is based on permanent residents. OAR 580-40-012; 577-50-005 *et seq.* By exempting seasonal licenses from the quota, ORS 472.115 directs OLCC to disregard the statewide quota as to seasonal licenses, at least to the extent that the quota is based on resident-population figures. But to the extent that OLCC makes its determination as to seasonal licenses by comparing, under any of its rules, a local ratio with the statewide quota, it applies the quota to seasonal licenses in violation of ORS 472.115.

When OLCC made that comparison here, it applied to seasonal licenses a rule governing regular dispenser licenses. OLCC argues 1) that it is not required to establish criteria for seasonal licenses separate from those for other dispenser licenses and 2) because a statute prevails over a conflicting rule, OAR 845-05-010, an applicant has notice that OLCC will apply the same criteria to all licenses, except where a statute conflicts. We have noted how OLCC disregarded a conflicting statute. That statute makes ratio evidence, which by rule is applicable to regular licenses, inapplicable to seasonal licenses. OLCC cannot apply the same rules to both types of licenses.

■ ORS 472.115 may not preclude OLCC from considering a license-to-population ratio as evidence indicating demand or lack of it for seasonal licenses. It could compare the local ratio of all licenses per local seasonal population with a statewide ratio of all licenses per statewide seasonal population. It could compare local seasonal licenses with statewide seasonal licenses. It could determine, without regard to the statewide quota, that one license per 2,000 seasonal population was reasonable.

Whatever standard OLCC might choose to apply, it must be defined in advance by rulemaking for the reasons

stated in *Sun Ray Dairy v. OLCC,* 16 Or App 63, 517 P2d 289 (1973).

Reversed and remanded for reconsideration.